GEORGE W. VAN VORST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2837.    Promulgated September 23, 1946.

*Ralph Kohlmeier, Esq.,* for the petitioner.
*Earl C. Crouter, Esq.,* for the respondent.

## OPINION.

Arnold, *Judge*: During the taxable years 1939, 1940, and 1941 C. B. Van Vorst Co. was a partnership in which seven individuals, including petitioner and his wife, held distributive interests. It was stipulated that petitioner's interest was 28.80086 per cent and his wife's interest was 2.46253 per cent. Petitioner was one of the managing partners and drew compensation for his services in addition to his distributive share of the profits. The partnership returns of income for the taxable years included a computation of the portions of the petitioner's distributive share of the profits deemed to be separate income and community income.

The petitioner and his wife filed separate returns. The petitioner's returns reported the amount shown on the partnership returns as his separate income, together with one-half of the amount there shown as community income of petitioner and his wife.

The respondent determined that the petitioner's entire distributive share of the profits, as well as the amount drawn by him as salary, was taxable to the petitioner and determined deficiencies for the taxable years accordingly. The petitioner contests this determination.

The issue is what portion, if any, of the petitioner's distributive share of the partnership income, including salary, is community income of petitioner and his wife, divisible between them upon their returns.

In several cases in California in which a husband and wife had equal shares in a partnership and other partners were involved, the Board of Tax Appeals held that the shares of the husband and wife in the profits were taxable to them equally and not entirely to the husband, *L. S. Cobb*, 9 B. T. A. 547; *Elihu Clement Wilson*, 11 B. T. A. 963; *Charles Brown*, 13 B. T. A. 981; and *E. L. Kier*, 15 B. T. A. 1114. As stated in the *Brown* case, this was on the theory that the interests of the wives constituted their separate property.

In G. C. M. 9825 (1931), X–2 C. B. 146, the General Counsel of the Bureau of Internal Revenue expressed an opinion as to the proper method of reporting income from a partnership business where the share of a husband or shares of a husband and wife, domiciled in California, are involved. Where both the husband and wife in California are members of the same partnership, the opinion was expressed that they are taxable in their individual capacity, the same as other members of a partnership and that no attempt should be made to apportion the partnership profits on any basis except the percentage of interest of each member.

The respondent seeks to apply in this case the rule stated in G. C. M. 9825, taking the view that the capital contributions of a husband and wife in California to a partnership are, by virtue of the partnership agreement, necessarily the separate property of each contributor.

However, this proposition was rejected in *McCall* v. *McCall* (1934), 2 Cal. App. (2d) 92; 37 Pac. (2d) 496. In that case a husband and wife who owned land as community property contributed it to a partnership venture with the husband's two brothers and their wives. Title was placed in a corporate trustee. The husband bought out the other partners, except his wife. The wife sued for divorce and contended that the partners' interests were transmuted into separate property by the partnership agreement and resulting conveyance, and that she owned a one-sixth share as separate property and a community interest in the interests held by her husband. The lower court held that the property was community and was to be divided equally. The California District Court of Appeal for the Fourth District sustained the lower court, saying:

* * * Community property invested by one of the spouses in a partnership enterprise with another remains community property. *Hulsman* v. *Ireland*, 205 Cal. 345; 270 Pac. 948. There can be no difference in this respect where both husband and wife enter into such a partnership venture with other parties, investing their community property therein. Such an interest in a partnership is not a new kind of property, but takes its character, as separate or community, in accordance with how and when it was acquired. While a husband and wife may by agreement change their community property into separate property, no such agreement appears in this partnership agreement in so far as the land put into the partnership by these parties is concerned. * * * In our opinion, this partnership agreement worked no such a transmutation as that contended by the appellant with reference to the property of which these parties are now the equitable owners, and the same remained community property if such it was at the time it was turned over to the partnership.

The Supreme Court of California denied a hearing on further appeal.

The contention of the respondent is contrary to the community property laws of California as interpreted by the state courts. We must conclude, therefore, that if any part of the capital investment of petitioner in the partnership was previously community property, it was not transmuted into his separate property by virtue of the partnership agreement. See *Rucker* v. *Blair*, 32 Fed. (2d) 222.

In *Glenn M. Harrington*, 21 B. T. A. 260, the Board held that under the statute requiring a partner in computing his net income to include his distributive share of partnership income, the entire share of a husband or wife partner in California is taxable to the partner, regardless of whether it is community or separate income. However, the Circuit Court of Appeals for the Ninth Circuit took a contrary view in *Black* v. *Commissioner* (1940), 114 Fed. (2d) 355, saying with reference to the corresponding provision of the Revenue Act of 1934:

In view of the language of the statute, we are not disposed to interpret it as meaning that the entire amount of income distributable to a partner is taxable to him, even though half of it is owned by his wife. The better interpretation of the provisions referred to would seem to be that, in cases involving community income,

the tax is imposed on the individual partner to the extent only of his ownership of the income.

Also, it appears from G. C. M. 9422, X-1 C. B. 245, 249, that the Commissioner does not agree with the theory of the *Harrington* case.

Since we are unable to agree with the respondent's contention that in California a partner's interest becomes his separate property as a consequence of a partnership agreement, we are required to ascertain by other means the identity, as separate or community income, of petitioner's distributive share, including the amount received as compensation for services.

In determining what part of the income derived from a business venture in California is community income and what part is separate income, the California courts have stated that it is one of the fundamental principles of the community property system that whatever is acquired through the toil or talent of either spouse belongs to the community. *In re Pepper's Estate*, 158 Cal. 619; 112 Pac. 62. Where a husband is engaged in a business in which his separate capital and his personal services are contributing to the profits, that part of the profits attributable to the capital investment is his separate income and that part attributable to his personal services is community income, the allocation to be determined from all the circumstances. *Pereira* v. *Pereria*, 156 Cal. 1; 103 Pac. 488.

In G. C. M. 9825, *supra*, in prescribing a rule for determining the credit allowable for earned income in cases where a husband is a member of a partnership in California, a formula was given for computing the portions of the husband's share attributable to his capital investment, on the one hand, and his services, on the other, allocating the profits in the ratio which a certain per cent return on the capital bears to an assumed reasonable salary allowance. The use of this formula was approved in *Clara B. Parker*, 31 B. T. A. 644, and it was applied in *J. Z. Todd*, 3 T. C. 643; remanded by the Circuit Court of Appeals for the Ninth Circuit, 153 Fed. (2d) 553. See *J. Z. Todd*, 7 T. C. 399. See also *Herbert L. Damner*, 3 T. C. 638, and *Lawrence Oliver*, 4 T. C. 684.

The petitioner contends that this formula should be applied here in order to determine what part of petitioner's share of the profits of the partnership is attributable to his services and what part is attributable to his capital investment.

In this case seven partners, closely related by blood or marriage, contribute capital, and they share in profits in proportion to their contributions. Two of these, petitioner and Carraher, perform services and receive as compensation therefor amounts agreed to by all the partners, which amounts are first deducted from the profits. By agreement of the partners the remaining profits are then allocated to

the seven in proportion to their capital interests. The share of these profits allocated to petitioner and Carraher is the same, in proportion to their investments, as that allocated to the five partners who perform no services. The partners have agreed among themselves upon the amounts which are to be allowed the managing partners as compensation for their services and upon the portion of the profits to be allocated to all the partners as a return on the invested capital. They have followed this practice consistently during all the years from 1933. It is clear from these facts that the amount of profits withdrawn by petitioner as "salary" is attributable to his services and the amount otherwise allocated to him as his distributive share is based upon and is attributable to his capital investment. See *Shea* v. *Commissioner*, 81 Fed. (2d) 937. Any resort to the formula outlined in G. C. M. 9825, *supra*, and used in *Clara B. Parker*, *supra*, is unnecessary where, as here, the determination may readily be made from the partnership arrangement as disclosed by the practice of the partners.

The amount petitioner drew as compensation for his services constitutes community income of petitioner and his wife, divisible between them upon their returns.

We have decided that the petitioner's distributive share, other than the amount drawn as compensation for services, is attributable to the capital investment in his name. His original contribution in 1933 amounted to $17,827.14 and was in part separate property and in part community property. His interest was acquired through and takes its character from his earlier investment in the Western Furniture Co., a corporation. He owned 93 shares of stock in that company at the time of his marriage and acquired 29½ shares by inheritance, all of which constituted his separate property. He acquired 11½ shares, which were placed in his wife's name and, presumably, were gifts to her. No question is raised concerning the profits attributable to these shares, which have been treated as the separate property of petitioner's wife. He bought in his own name 2 shares in 1924 and 10 shares in 1929 from salary saved. The presumption is that these 12 shares, paid for from salary, which is community income, are community property and no facts are shown to overcome that presumption. Income attributable to California community property acquired after July 29, 1927, is divisible community income. Income attributable to community property acquired before July 29, 1927, is not divisible community income, but is taxable to the husband even though the income is earned after that date. *Hirsch* v. *United States*, 62 Fed. (2d) 128; Merten's Law of Federal Income Taxation, sec. 19.04. It follows that any income attributable to the 10 shares petitioner acquired in 1929 (after July 29, 1927) is divisible community income; while that attributable to the two shares acquired in 1924

(prior to July 29, 1927) is taxable to petitioner, as is also, of course, any income attributable to the 122½ shares which constituted his separate property.

The interests of the partners in the partnership as established in 1933 were based upon their stockholdings in the corporation as they existed in 1930 at the time of the merger. Petitioner's interest of 26.9 per cent in 1933 was derived from his former holdings of 134½ shares of stock, of which 122½ were his separate property, 2 were community property acquired before July 29, 1927, and 10 were community property acquired after that date. While a change occurred in the actual percentages upon the withdrawal of one partner in 1936, and petitioner's share in the succeeding partnership became 28.80086 per cent, it does not appear that this represented an acquisition of property by the petitioner which might be presumed to be community property. Rather it seems that the proportionate interests of the continuing partners remained the same with respect to each other and the one partner's interest was eliminated. For purposes of computing the distributions in percentages, the figures representing the interests of the remaining partners were all increased proportionately. Petitioner's relative proportions of separate or community property were not changed by this transaction.

Petitioner's total capital investment in the business increased substantially from 1933 to 1941. Part of the profits were left in the business and it becomes necessary to determine the character of this part of the investment. Under California decisions it is presumed, in the absence of evidence to the contrary, that money for the maintenance of the family is drawn from community funds before there is an encroachment upon separate income. *In re Tompkins Estate*, 123 Cal. App. 670; 11 Pac. (2d) 886; *Huber* v. *Huber*, 167 Pac. (2d) 708. The amounts withdrawn by petitioner are, therefore, to be considered as having been drawn from the community income to the extent thereof, any excess being drawn from separate income.

In our findings we have shown for the years 1933 to 1941, both inclusive, the gross partnership profits before deduction of partners' salaries, and the petitioner's salary, his share of the distributive profits, and his withdrawals. For each of these years the petitioner's salary was divisible community income. In 1933 10/134.5 of petitioner's share of the distributive profits was also divisible community income, the remainder of his share of the profits being taxable to petitioner. Since his withdrawals are presumed to be first from the community profits, the effect is that in any year when the community profits were withdrawn and part of the separate profits were left in the business, the separate property part of petitioner's capital investment increased, while the community property part did not, and as a result the

proportions of community and separate property in his capital investment were changed. This in turn will affect the computation of the portions of his distributive profits in the following year attributable to community capital and to separate capital.

It will therefore be necessary to make a computation, beginning with 1933 and continuing through 1941, to ascertain the separate and community parts of petitioner's capital investment and from that to determine the amount of his profits in the taxable years attributable to the separate and to the community capital. The amount of the divisable community income and of the income taxable to petitioner as separate income or as income from community property acquired before July 29, 1927, can then be determined for the taxable years.

*Decision will be entered under Rule 50.*