HUGH B. TINLING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8996.   Promulgated December 26, 1946.

*W. W. Witherspoon, Esq.*, for the petitioner.
*Douglas Barnes, Esq.*, for the respondent.

**OPINION.**

ARUNDELL, *Judge*: Petitioner now contends that his entire capital interest in the partnership of Tinling & Powell in the taxable years was community property, and that consequently all of his distributive share of partnership income was community income, taxable one-half to himself and one-half to his wife. Respondent, on the other hand, has determined and still contends that the only portion of the distributive share of partnership income constituting community income was petitioner's salary of $3,120 in each of the taxable years, and that the remainder was petitioner's separate income.

Petitioner rests his case upon the argument that, although he at one time had some separate property invested in the corporation, Tinling & Powell, Inc., that property has since been so commingled with community property that it is impossible to trace any part, and the whole

must, under Washington law, be regarded as belonging to the community.

This contention was raised for the first time at the hearing. Few facts were alleged in the original petition, and counsel for petitioner explains that information regarding the sources of petitioner's capital investment in the partnership was first made available to him shortly before the hearing. An amended petition was therefore filed at the hearing, and respondent subsequently filed his answer thereto. Respondent was thus placed in a somewhat disadvantageous position, but, in view of the circumstance that the facts were not made available to petitioner's counsel at an earlier time, respondent raised no objection to the introduction of evidence on the theory of the amended petition, and the hearing proceeded accordingly.

In support of his argument petitioner relies principally upon *In re Buchanan's Estate*, 89 Wash. 172; 154 Pac. 129. In that case a husband and wife were married in 1901, at which time a corporation was organized by the husband and a third person. Of the husband's original capital investment in the amount of $900, $400 was from his separate funds and $500 from his wife's separate funds. The wife died in 1911, and her son by a former marriage contended that she had a community half interest in the stock of the corporation. By the time of the wife's death the value of the stock had increased twentyfold. The court found that the enhancement in value was due chiefly to the husband's services. Since dividends on the stock had been credited to the same account as the husband's salary on the corporate books, from which account living expenses had been paid, the court held there had been such a commingling that the identity of the separate property was lost and all the stock was community. In so deciding, it stressed the fact that the original contribution of separate funds was very small by comparison with the value of the stock at the wife's death.

We think the facts in the instant case are sufficiently different from those in the *Buchanan* case to make inapplicable the ruling in that case. Moreover, we find from an analysis of other decisions of the Washington courts that the *Buchanan* case has often been distinguished and, in effect, limited to its own facts. Among cases in which the Supreme Court of Washington went to considerable lengths to trace separate investments through corporate books and records and through exchanges of property and business transactions covering a period of years, in order to determine the respective portions of stockholdings or exchanged property constituting separate and community property are: *Jacobs* v. *Hoitt*, 119 Wash. 283; 205 Pac. 414; *In re Brown's Estate*, 124 Wash. 273; 214 Pac. 10; *In re Hebert's Estate*, 169 Wash. 402; 14 Pac. (2d) 6; *State ex rel Van Moss* v. *Sailors*, 180 Wash. 269;

39 Pac. (2d) 397; and *In re Dewey's Estate*, 13 Wash. (2d) 220; 124 Pac. (2d) 805.

In the *Brown* case, *supra*, the court stated that the fundamental principles to be followed in determining the status of separate or community property are:

1. The presumption is that property acquired during coverture is community property.

2. The status of property is to be determined as of the date of its acquisition.

3. If property is once shown to have been separate property, the presumption continues that it is separate until overcome by evidence.

4. Separate property continues to be separate through all its changes and transitions, so long as it can be clearly traced and identified.

5. The rents, issues, and profits of separate property remain separate property.

6. Separate property may lose its identity as such by being consolidated with community property.

It thus appears that the presumption that property once separate continues to be so, even through transitions and exchanges, is of no less importance than the presumptions with respect to community property. The right of spouses in their separate property is as sacred as is the right in their community property. *In re Dewey's Estate, supra; Guye v. Guye*, 63 Wash, 340; 115 Pac. 731.

In *Julius Shafer*, 2 B. T. A. 640, after discussing the *Brown, Buchanan*, and *Hoitt* cases, we stated that the decisions of the Supreme Court of Washington:

* * * lay down the rule that where business income was produced in part by the separate property and in part by the efforts of the community, and each of these two factors was substantial, the court will attempt to allocate such earnings; but if it appears that the income is to be attributed primarily to one element, the other element may be disregarded.

With the foregoing principles in mind, we find that the evidence adduced by petitioner in the instant case demonstrates that respondent's determination is in part erroneous. That is to say, petitioner has proved that at least some part of his capital investment in the partnership is community property. On the other hand, his evidence falls short of establishing that there has been such a commingling of separate and community funds as to bring him within the ambit of the *Buchanan* case and require a holding that all his capital investment is community property. Factually, we think that the instant case is more nearly like the *Hoitt, Sailors, Brown*, and *Hebert* cases, all *supra*, and that petitioner's investment of separate funds is susceptible of being traced through the corporation into the partnership, which took over the net assets of the corporation. Although an exact determination is difficult, a reasonable approximation, as in the *Hoitt* case, may be made from the facts of record.

Petitioner held some stock in the corporation at the date of his marriage. Admittedly this was his separate property. Of the addi-

tional stock acquired on February 15, 1939, through the cancellation of accrued salary owing to petitioner and loans made by him to the corporation, a part was community and a part separate. This is so because a part of the accrued salary account represented salary earned by petitioner before marriage. We have determined the amount of accrued salary which represented his separate property, and the ratio of that to the total credits canceled on February 15, 1939, affords the measure of the separate property portion of the stock issued to petitioner on that date.

Although petitioner disposed of some of his stockholdings prior to dissolution of the corporation, he has not shown the source of such shares. Therefore, bearing most heavily against him because of his neglect in that regard, we have assumed that he retained the stock which constituted his separate property. The result is that at dissolution, 37.91 per cent of petitioner's proprietary interest in the net assets, based upon his stockholdings, represented his separate property. We find no merit in petitioner's contention that so-called contributions to capital, consisting of the excess of the credits canceled on February 15, 1939, over par value of the stock received, and accrued salary owing to him as of December 31, 1940, so tainted all the stockholdings with a community interest that all must be held to be community property. We think it is sufficient answer that petitioner's proportionate proprietary interest in the net assets was not thereby increased, for his partnership interest was fixed at 29 per cent—the same percentage as his stockholdings in the corporation. If his relative contributions to capital were greater than those of the other stockholders, the excess might well have amounted to a gift or gifts.

The partnership took over the assets and liabilities of the corporation and continued in the same kind of business. We hold, therefore, that at the date the partnership was organized petitioner's capital investment of $17,842.70 was his separate property to the extent of 37.91 per cent, and the remainder was community property.

We must next consider the question as to how much of petitioner's share of partnership income is to be treated as attributable to personal services and how much to a return on capital investment. Petitioner suggests that if it is held that not all of his capital investment is community property, an allocation based on the formula contained in G. C. M. 9825, X–2 C. B. 146, would be more equitable.

Allocations based upon that formula, that is, in the ratio of an assumed reasonable salary allowance to a fair return on capital, have been approved by this Court in *Clara B. Parker, Executrix*, 31 B. T. A. 644, and *J. Z. Todd*, 3 T. C. 643; affirmed and remanded, 153 Fed. (2d) 553; decision on remand, 7 T. C. 399. In the instant case, how-

ever, the partners provided specifically in their partnership agreement that petitioner and Powell should draw $3,120 each year "as salary due them." They were the only two partners who rendered services and managed the business. According to the practice of the partners, the salaries of petitioner and Powell were first deducted, and the remaining partnership profits were divided among all the partners in proportion to their capital investments. With the exception of $3,120 salary, the partners who performed no services received the same relative return on their capital investment as did the petitioner. No additional sums were accrued on the books as salary owing to petitioner.

In the light of these circumstances, we can do no more than hold that the salary of $3,120 agreed to by all the partners represents the measure of petitioner's compensation for services rendered, and that the remainder of his share of partnership income is to be treated as a return on capital. Such was our holding in *George W. Van Vorst*, 7 T. C. 826, in which we stated that any resort to the formula outlined in G. C. M. 9825 is unnecessary where the partners have agreed among themselves upon amounts which are to be allowed the managing partners as compensation for services and upon the portion of profits to be allocated to all the partners as a return on invested capital. Cf. *In re Hebert's Estate, supra.*

Since not all of the profits were withdrawn by petitioner in the year earned, his capital investment was greater in 1942 and 1943 than it was in 1941, and the relative separate and community portions of the capital investment were different. These portions can be determined in the recomputation. We have held that petitioner's original investment of $17,842.70 in the partnership was separate property to the extent of 37.91 per cent. We have shown in our findings petitioner's shares of partnership income for 1941, 1942, and 1943. In 1941, $3,120 thereof constituted community income attributable to services; 37.91 per cent of the remainder constituted separate income attributable to separate capital investment; and 62.09 per cent constituted community income attributable to the community capital investment. We have also shown in our findings the debits and credits to, as well as the year end balances in, petitioner's investment account on the partnership books. There being no showing to the contrary, the withdrawals will be treated as having been made first from community funds. *Lawrence Oliver*, 4 T. C. 684. The effect is that when community profits were withdrawn and separate profits were left in the business, the separate property part of petitioner's capital investment increased. Cf. *George W. Van Vorst, supra.*

From the foregoing, the relative proportions of petitioner's separate and community capital investment can be determined for 1942 and

1943, and these in turn will determine what proportion of the distributive shares of partnership income other than the salary of $3,120 represented return on separate capital investment and what proportion represented return on community capital investment. See *George W. Van Vorst, supra*.

*Decision will be entered under Rule 50.*