ASHLEY MANNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5472. Promulgated March 12, 1947.

*A. Calder Mackay, Esq.,* and *Adam Y. Bennion, Esq.,* for the petitioner.

*Byron M. Coon, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: The method and manner of taxing income and the rates at which it is taxed are determined by the Federal income tax law. The *ownership* of the income which is to be taxed is, however, determined under state law. *Poe* v. *Seaborn*, 282 U. S. 101. The applicable California statutes which determine the ownership of the income involved in this proceeding are printed in the margin.[1]

The parties are agreed as to the applicable statutes and they are also agreed as to the amount of net income of the business known as "Manning's Big Red Piano Shop," which was conducted as a sole proprietorship by the petitioner, Ashley Manning. They are disagreed as to the amounts of such income which were the separate income of petitioner and those which were the community income of petitioner and his wife.

Petitioner contends that his separate capital did not earn and should not be credited with a return in excess of 8 per cent and that the bal-

---

[1] Civil Code of California (1937) :

"Sec. 161a. *Interests in community property.* The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property. * * *"

"Sec. 163. *Separate property of the husband.* All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property. * * *"

"Sec. 164. All other property acquired after marriage by either husband or wife, or both, including real property situated in this State and personal property wherever situated, here-, tofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State, is community property * * *"

ance of the income from the business constituted community income because it was due primarily to petitioner's personal services. He contends that the evidence shows clearly that the earnings from petitioner's business were primarily due to his activities, skill, ability, and business acumen and not to the capital invested therein, that 8 per cent on the capital invested therein is all that should be attributed to capital, that the balance of the income should be attributed to personal services of petitioner and is community income, and that there is no occasion to apply G. C. M. 9825. In support of these contentions petitioner strongly relies on *Lawrence Oliver*, 4 T. C. 684. He contends, in the alternative, that the respondent's formula set out in G. C. M. 9825, if applied here, should be applied only to the income derived from the merchandising phase of the business and not to the part used in carrying installment paper, because in no event did the capital invested in installment paper earn more than 8 per cent; also, that if the formula is to be used the income should be apportioned in the ratio that an 8 per cent return upon such capital bears to a reasonable value for the services rendered by petitioner, which should be not less than $40,000. Petitioner also maintains that his withdrawals in 1940 to pay income taxes on his separate income for 1939 in the sum of $5,743.66 should be charged to his separate capital. It is agreed that the taxable net income in 1941 of petitioner's business was $94,930.01.

Respondent contends that, of the taxable net income for 1941 in the amount of $94,930.01, the amount of $60,797.12 is attributable to capital and is separate income and the remainder of $34,132.89 is community income. He arrived at these amounts by the use of G. C. M. 9825 and, in so doing, he determined that 8 per cent was a fair return on capital and $10,000 per annum was the fair value of petitioner's services during the years 1939, 1940, and 1941.

The California rule of property law is that, where a husband has a capital investment in a business at the time of his marriage which he continues to conduct during marriage, such capital investment continues to be his separate property. Where the subsequent profits from the business are partly attributable to the husband's separate capital and in part to his personal services, that part of the profits attributable to the capital investment is his separate income and that part attributable to his personal services is community income. The question of what part of the profits arises from the use of capital and what part from the personal services of the husband depends upon the facts and circumstances of each case. The income attributable to the capital would amount at least to the usual interest on a long term, well secured investment, unless the facts show otherwise. *Pereira* v. *Pereira*, 156 Cal. 1; 103 Pac. 12; *Estate of Gold*, 170 Cal. 621; 151 Pac. 12; *In re*

*McCarthy's Estate*, 127 Cal. App. 80; 15 Pac. (2d) 223; *Todd v. Commissioner*, 153 Fed. (2d) 553; *George W. Van Vorst*, 7 T. C. 826.

In support of his contention that only 8 per cent should be apportioned to capital and that the balance of the income should be apportioned to petitioner's services, he relies largely upon our decision in *Lawrence Oliver*, *supra*. In that case our decision in favor of the taxpayer was based on the fact that "the business was profitable, the earnings and profits thereof being due in part to the capital invested, but mainly due to the activities, management, and skill of the taxpayer, whose full time was devoted to its operation." In the *Oliver* case, among other things, we said:

We hold that the income from petitioner's business from and after July 29, 1927, through 1939 should be apportioned between the capital invested and his services; that the apportionment to capital should be an amount equal to 7 percent of such capital, and that the remainder of the business income should be apportioned to petitioner's services in conducting such business. The latter is community income and the former is separate and community income in the proportions that the capital comprises separate and community property.

Although the business in which Oliver was engaged was very different from that in which the petitioner was engaged, we find many similarities in the two cases, particularly that, as Lawrence Oliver furnished the main part of the business acumen and driving power in the business conducted by him as a sole proprietor, so did Manning furnish the business acumen and driving power of the business conducted by him as a sole proprietor. Concerning the unique character of services which petitioner furnished the business which he was carrying on, Everett J. Rothschild, district sales manager for the Wurlitzer Piano Co. on the Pacific Coast, testified, among other things, as follows:

Well, I find him very unusual. Anyone that does the volume of business he does ordinarily has a larger sales organization, and certainly assistance along the line. I know of no one with whom I deal that reaches his scope and does so single-handed, so to speak. He is definitely unusual from that standpoint, because in my observations of his operation, why, it is strictly a one-man setup, with no reflection on the other folks there whom I am personally acquainted with.

In my dealings with him since 1938 I have found strictly he is the man behind everything and the man responsible for everything that takes place with regard to purchasing, as well as sales. I find his method of advertising very unusual; no one else practices in the same way.

In a general way, why, I don't know of anyone with whom I have ever dealt that does the volume of business he does and does it on the basis he does, in such a restricted way.

There is much other testimony in the record along the same lines as the above, but it would make this opinion too long to recite it in detail. On the strength of this evidence, we have found in our findings of fact that 8 per cent on the capital invested in the business from June 30, 1939, when petitioner married, through the taxable year 1941, should be attributed to capital and the balance of the earnings of the

business should be attributed to personal services of petitioner and should be apportioned accordingly. This we understand to be in harmony with our decision in *Lawrence Oliver, supra.* Since some of the profits were kept in the business after petitioner's marriage in 1939 and it appears that these figures are not in dispute, the portions of separate and community capital can be determined in the recomputation under Rule 50.

Respondent relies strongly upon *Clara B. Parker, Executrix*, 31 B. T. A. 644, and *J. Z. Todd*, 3 T. C. 643, which approved the formula set out in G. C. M. 9825. In the *Parker* case the evidence did not establish that the income for the years in question was primarily due to the husband's efforts, ability, and skill. In the *Todd* case, in our original opinion, we pointed out that there was no evidence to indicate that the allocations made by the respondent were unreasonable. The taxpayers argued that under the California law the burden was upon the respondent to establish that a greater amount than the legal rate of interest constituted separate property of the taxpayers. We held that the burden of proof was upon the taxpayers to prove that the respondent's allocation was in error, and sustained the respondent's determination in view of taxpayers' neglect of their duty of going forward with the proof. On appeal, the Ninth Circuit said that the "Commissioner's method of allocation between the separate capital income and the managerial community earnings is a rational one," and "the burden of showing error in computing in its application is upon the taxpayers." In our decision on remand (7 T. C. 399), we again pointed out that the taxpayer did not offer proof as to what amounts were properly attributable to capital and what amounts to personal services. We said:

* * * Petitioners have not attempted to demonstrate what final amounts, if different from those determined by respondent, should properly result from the application of the method. Their sole purpose is to avoid the use of the method altogether, and to shift to respondent the burden of sustaining his determination and proving that a greater proportion of the distributive net income of the partnership than a 7 per cent return on invested capital is separate property of the petitioners. Their efforts on remand had, in large part, been directed to an attempt to demonstrate that respondent's determination is "erroneous upon its face," by reason whereof they contend that no presumption of correctness attaches thereto. We are not convinced, however, of error in respondent's determination; and, as we said in our original opinion, we do not think the burden has thus been shifted to the Commissioner.

We think that the evidence adduced by petitioner in this proceeding has affirmatively shown that the respondent's allocation was in error. We think that petitioner has proved by competent evidence that no more than 8 per cent on the capital invested should be attributed to the earnings of capital and that the remainder of the earnings of the business should be attributed to the personal services of petitioner.

Moreover, the evidence established in *J. Ž. Todd, supra*, that the partnership had a large capital investment in inventory because it was thought to be a good investment in view of ascending prices. The Ninth Circuit pointed out that in 1940 the war in Europe and the war preparations in this country caused a constant increase in demand for lumber, and with it an increase in prices and in value of the inventory, and that the Commissioner and the Tax Court were warranted in inferring that there was a substantial gain in the capital value of the inventory as distinguished from earnings from new business obtained. In our decision on remand we thought that under all the circumstances the amounts of income attributed by the respondent to invested capital in the years 1940 and 1941 were reasonable amounts to be expected as a return on the large capital investments in those years.

In the instant proceeding the evidence satisfactorily establishes that the profits of the business were not due to increases in price or increases in the value of the inventory.

Having decided petitioner's main contention in his favor, it becomes unnecessary to discuss petitioner's alternative contention, that the respondent's formula if employed at all should be applied only to the income derived from the merchandising phase of the business and not to that which was kept invested in installment paper.

Petitioner also maintains that withdrawals during 1940 to pay income taxes on his separate income for the period prior to June 30, 1939, in the amount of $5,743.66 should be charged to his separate capital. The evidence shows that petitioner made withdrawals in 1940 for income taxes in the amount of $6,600.28. However, there is no showing that such withdrawals were from petitioner's separate property. Such withdrawals, therefore, are chargeable to the community earnings. *Lawrence Oliver, supra; Hugh B. Tinling*, 7 T. C. 1393. Cf. *Van Camp* v. *Van Camp*, 53 Cal. App. 17; 199 Pac. 885. On this issue we sustain respondent.

*Decision will be entered under Rule 50.*