KENNETH S. BATTELLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CORA E. BATTELLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8944, 8945. Promulgated September 9, 1947.

*William N. Snell, Esq.,* and *Joseph C. Kimble, Esq.,* for the petitioners.

*T. M. Mather, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge*: In the first issue the respondent has predicated his determination of the deficiency and based his argument solely on the fact that the petitioner did not request or obtain permission of the Commissioner to change his "basis of accounting or method of reporting income" from the cash to the accrual method for the taxable year prior to making such change and so reporting his income.

The petitioner's position can best be stated by the following excerpt from his brief:

Petitioners submit that on the basis of the law and the facts of this case, the change made was not a change in the method of accounting, and consequently not subject to the general rule relied on by respondent; that even if such change is a change in the method of accounting, petitioners belong to a special class of taxpayers for whom a special method of reporting has been provided and that changes to such method are explicitly and implicitly excepted from the operation of the general rule by the terms of Regulations 103 themselves, or, to state the proposition in another way, Section 19.22 (c)–6 grants a blanket permission to change and sets forth the terms and conditions upon which such change may be made.

The respondent bases his arguments on section 41 of the Internal Revenue Code [1] and the condition imposed by section 19.41–2 of Regulations 103 [2] and states that the accrual method is mandatory when inventories are used and that a taxpayer must first secure permission from the Commissioner before he changes from one method of ac-

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

[2] SEC. 19.41–2. *Bases of Computation and Changes in Accounting Methods.*—* * *
* * * * * * *
A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner.
* * * * * * *

counting to another. These principles are fundamental and admit of no argument even if the petitioner were inclined to controvert them. The respondent then anticipates that petitioner would rely on section 19.22 (c)–6 of Regulations 103 [3] and seems to think that the petitioner's contention is fully overcome by the provision of the regulation which states "if the use of the 'farm-price method' of valuing inventories for any taxable year involves a change in method of valuing inventories from that employed in prior years, permission for such change shall first be secured from the Commissioner as provided in section 19.41–2."

It is obvious that the statutes, the Commissioner's regulations, and the petitioner himself desire to proceed on the truism that returns of a farmer, as well as of all other taxpayers, must be made on the basis

---

[3] SEC. 19.22 (c)–6. *Inventories of Livestock Raisers and Other Farmers.*—Farmers may change the basis of their returns from that of receipts and disbursements to that of an inventory basis provided adjustments are made in accordance with one of the two methods outlined in (1) and (2) below. It is optional with the taxpayer which method is used, but, having elected one method, the option so exercised will be binding upon the taxpayer for the year for which the option is exercised and for subsequent years unless another method be authorized by the Commissioner.

(1) Opening and closing inventories shall be used for the year in which the change is made. There should be included in the opening inventory all farm products (including livestock) purchased or raised which were on hand at the date of the inventory, and there must be submitted with the return for the current taxable year an adjustment sheet for the preceding taxable year based on the inventory method, upon the amount of which adjustment the tax shall be assessed and paid (if any be due) at the rate of tax in effect for that year. Ordinarily an adjustment sheet for the preceding year will be sufficient, but if, in the opinion of the Commissioner, such adjustment is not sufficient clearly to reflect income, adjustments for earlier years may be accepted or required. If it is impossible to render complete inventories for the preceding year or years, the Commissioner will accept estimates which, in his opinion, substantially reflect the income on the inventory basis for such preceding year or years; but inventories must not include real estate, buildings, permanent improvements, or any other assets subject to depreciation.

(2) No adjustment sheets will be required, but the net income for the taxable year in which the change is made must be computed without deducting from the sum of the closing inventory and the sales and other receipts, the inventory of livestock, crops, and products at the beginning of the year; provided, however—

(a) That if any livestock, grain, or other property on hand at the beginning of the taxable year has been purchased and the cost thereof not charged to expense, only the difference between the cost and the selling price should be reported as income for the year in which sold;

(b) But if the cost of such property has been charged to expense for a previous year, the entire amount received must be reported as income for the year in which sold.

Because of the difficulty of ascertaining actual cost of livestock and other farm products, farmers who render their returns upon an inventory basis may value their inventories according to the "farm-price method," which provides for the valuation of inventories at market price less direct cost of disposition. If the use of the "farm-price method" of valuing inventories for any taxable year involves a change in method of valuing inventories from that employed in prior years, permission for such change shall first be secured from the Commissioner as provided in section 19.41–2. In such case the opening inventory for the taxable year in which the change is made should be brought in at the same value as the closing inventory for the preceding taxable year. If such valuation of the opening inventory for the taxable year in which the change is made results in an abnormally large income for that year, there may be submitted with the return for such taxable year an adjustment statement for the preceding year. This statement shall be based on the "farm-price method" of valuing inventories, upon the amount of which adjustments the tax, if any be due, shall be assessed and paid at the rate of tax in effect for such preceding year. If an adjustment for the preceding year is not, in the opinion of the Commissioner, sufficient clearly to reflect income, adjustment sheets for prior years may be accepted or required.

and in the manner which most clearly reflect his income. The peculiar problem of the farmer and the livestock raiser is to select the method which best achieves that end. They are allowed to use the cash receipts and disbursements basis, the ordinary inventory system, other modified types of accounting, including the crop basis, or the special "farm-price method" (the valuation of inventories at market price less direct cost of disposition).

We assume that out of a consciousness of the farmer's potential and actual predicaments, section 19.22 (c)–6 and its predecessors were fashioned and promulgated by the Commissioner. That section sets up the farmer and the livestock raiser as a special class of taxpayers. If there were any conflict with its provisions and regulations under section 22 (c) of the code [4] couched in general terms, it is axiomatic that the former would prevail. See *United States* v. *Chase*, 135 U. S. 255; *Monarch Life Insurance Co.*, 38 B. T. A. 801.

The petitioner argues that the only reference in sections 19.22 (c)–6 to 19.41–2 (requiring a taxpayer who changes the method of accounting employed in keeping his books to secure the consent of the Commissioner before computing his income upon the proposed new method) is the requirement that "if the use of the 'farm-price method' of valuing inventories for any taxable year *involves a change in method* of valuing inventories from that employed in prior years, permission for such change shall first be secured from the Commissioner as provided in section 19.41–2." (Italics supplied.) He then demonstrates that no change in the method of valuing his inventories occurred, nor was any such change sought, in the taxable year, because he always kept a record of his inventories by the farm-price method. Thus there arose no necessity to invoke or consider that portion of section 19.22 (c)–6 relating to the requirement that the permission of the Commissioner was a condition precedent to his change from the receipts and disbursements basis to an inventory basis.

The point is well made. The petitioner did not make any change in his "method of valuing inventories," as set forth in the regulation. The only change he made was in strict compliance with the initial portion of section 19.22(c)–6, to wit: "Farmers may change the basis of their returns from that of receipts and disbursements to that of an inventory basis," provided certain definitely prescribed adjustments

---

[4] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(c) INVENTORIES.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

\* \* \* \* \* \* \*

are made. The petitioner made such adjustments and submitted the required "adjustment sheet" for not only the preceding taxable year, but appropriate sheets for the three preceding taxable years.

Thus, by availing himself of a special privilege or right extended to him in section 19.22(c)–6, the petitioner undertook to spread over the three years the fruits of his labors expended during those years which were accumulated and sold in the taxable year. He accomplished the very purpose for which the regulation was designed to provide. The only reason advanced by the respondent for refusing to accept and approve the petitioner's return submitted on the inventory basis is that petitioner failed first to obtain the Commissioner's consent to the change from a receipts and disbursements basis.

The respondent does not challenge the fact that the petitioner's return clearly and properly reflects his income, nor does he even suggest that the petitioner did not follow precisely respondent's regulations which set forth the mode and mechanics of the change from a cash basis. Under the facts of record, section 19.22(c)–6 does not require the prior consent of the Commissioner, according to our interpretation of that section. Of course, if the petitioner should seek hereafter to change the method "elected" to another method, he must secure the Commissioner's approval. But the present situation does not involve that necessity.

The petitioner compares section 19.22 (c)–6 with its counterparts in Regulations 45, 74, and 77 and asserts that it is substantially the same in all regulations. With this statement we agree. Under Regulations 45 the Commissioner issued an administrative ruling known as Office Decision 841 (4 C. B. 53, published in 1921). The relevant portion of that decision is as follows:

It is not contemplated by Treasury Decision 3104 that farmers must obtain formal permission in order to change the basis of their returns from that of receipts and disbursements to that of an inventory basis.

[T. D. 3104 inserted in Regulations 45 a new article 1585 (a), relating to the right of the farmer to change the basis of his return from that of receipts and disbursements to that of an inventory basis. Article 1585 (a) is the predecessor of section 19.22 (c)–6.]

O. D. 841 has not been amended or rescinded. The only reference to it is found in I. T. 2614 (XI–1 C. B. 48), governing the change from the receipts and disbursements basis to the crop basis, a specialized method of inventory covering crops which require more than a year to mature and to be placed in condition for the market. The appropriate excerpt from I. T. 2614 is as follows: "Office Decision 841 (supra) and Mimeograph 3180 (C. B. III–1 p. 64), to the extent that the same are inconsistent herewith, are revoked."

We find nothing in I. T. 2614 inconsistent with the continued application of O. D. 841 to the facts before us. Thus the respondent himself, during a long period of years, has considered his own regulation as not requiring his consent to a change in the return of a farmer or livestock raiser from a receipts and disbursements basis to an inventory basis. The petitioner is sustained on this issue.

The second issue requires our determination of the correct amount of community property income taxable to the petitioner and his wife. The parties agree that income produced from the use of separate property and from the personal services of one spouse in California is partly separate income and partly community income and that the proper apportionment of income between that derived from the use of separate property and that derived from personal services is a question of fact.

The respondent's position is that the petitioners have failed to prove that the amount of community income was greater than that determined by the Commissioner. The petitioner contends that the respondent's apportionment of income was arbitrary and unreasonable and had no relation to the extent and character of the petitioner's services or of the separate capital investment. He further argues that the formula established in *Clara B. Parker*, 31 B. T. A. 644, is applicable to the facts of record and should be used to ascertain the proper amount of income allocable to community property.

In the reallocation and readjustment of the petitioner's income under section 19.22 (c)–6, based on the adjustment sheets filed by the petitioner, it may be that this question will become moot, since the Commissioner has determined that the petitioner's services were reasonably worth $10,000 a year. However, the record reveals that the petitioner's total net worth, all invested in his business of grain and cotton farming, on January 1, 1941, was $109,161.38, and that this sum remained constant throughout the year. Such amount constituted his separate property. Seven per cent is a fair return on his invested capital. The reasonable value of the petitioner's service was stipulated to be $10,000. With these factors determined, a recomputation of the community income may be made, if need be, according to the formula established in the *Clara B. Parker* case and followed consistently in the later cases. *Anton Dolenz*, 41 B. T. A. 1091; *J. Z. Todd*, 7 T. C. 399; cf. *Hugh B. Tingling*, 7 T. C. 1393.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Turner and Hill, *JJ.*, dissent.