[No. 23754. Department One. August 25, 1932.]

*In the Matter of the Estate of* LEON HEBERT, SR., *Deceased.*

LENA HEBERT, *Appellant,* v. LEON HEBERT, JR., *as Executor, Respondent.*[1]

*Henry T. Ivers* and *Stephen V. Carey,* for appellant.
*James A. Dougan,* for respondent.

PARKER, J.—This is a controversy of equitable cognizance arising in the probate proceedings for the administration of the estate of Leon Hebert, Sr., deceased, pending in the superior court for King county.

Lena Hebert, the widow of deceased, filed in the probate proceedings her petition praying for an adjudication that the property of the estate was, at the time of the death of the deceased, the community property of herself and deceased, and that it be administered and distributed accordingly. Leon Hebert, Jr., the executor

[1] Reported in 14 P. (2d) 6.

under the will of the deceased, administering the estate, having inventoried and claimed the property as the separate property of the deceased at the time of his death, answered the petition of Lena Hebert accordingly. The issues so made proceeded to trial upon the merits, resulting in a judgment decreeing the property to have been the separate property of the deceased at the time of his death, and that it should be administered and distributed as such in accordance with the terms of his will, which was admitted to probate in the administration proceedings. From this disposition of the matter in the superior court, Lena Hebert has appealed to this court.

We do not find in the record before us any room for serious controversy over the controlling facts. We think they may be fairly summarized as follows: In May, 1910, the deceased and W. H. Olin, both residents of Seattle, duly organized the Northwest Ice Machine Company as a corporation under the laws of this state. The capital stock was by the articles of incorporation fixed at twenty thousand dollars, divided into 400 shares each of the par value of fifty dollars. Deceased and Olin each then subscribed for two hundred shares. Soon thereafter, deceased paid upon his subscription twenty-five hundred dollars, and Olin paid upon his subscription fifteen hundred dollars.

Deceased was a skilled mechanic, and also possessed considerable business ability. He was then made general manager of the business at a salary of $125 per month. He continued in that position up until 1926, when he sold his stock and received in payment thereof the property here in question, as will presently appear. His salary was increased from time to time, all of which he withdrew as it accrued.

In 1917, deceased purchased Olin's stock, and for a time thereafter was the owner of all of the stock of the

corporation. In 1920, he gave twenty shares of his stock to his son Leon, Jr., the present executor under his will, who was then, and continued for many years thereafter, an employe of the company, being since the year 1920 the secretary of the company and having a considerable part in the management of the business. Because of the business prospering and the increase of the value of its properties up to 1926, the stock of the company had then become actually worth its par value, though the stock subscriptions were not paid other than by the increase of the business and properties.

On November 25, 1919, deceased married appellant. At that time, his property consisted largely of his stock in the Northwest Ice Machine Company. At that time, she possessed property of the total value of but a few hundred dollars. Thereafter, deceased continued in the employ of the company until 1926, as general manager at a salary of $250 per month, which he withdrew from month to month as it accrued. This money was used to pay the family expenses of himself and appellant, and for other purposes wholly apart from the business of the corporation. The community received the benefit of this earned money during his lifetime, and appellant's present separate possessions are in a large measure fruits of those earnings, none of which are now claimed by Leon, Jr., as a part of the estate for purposes of administration.

In 1926, deceased sold his stock in the Northwest Ice Machine Company to the Baker Ice Machine Company, receiving in payment therefor the promissory notes of that company, since then renewed by other notes, and also one hundred shares of stock in the reorganized Northwest Ice Machine Company, it then becoming a subsidiary corporation to the Baker Ice Machine Company. This is the property now claimed by appellant to be the community property of herself and deceased

at the time of his death. Deceased's employment and active management in the affairs of the Northwest Ice Machine Company then ceased. Thus, there can be readily traced and clearly identified the property here in controversy as being the same property, in changed form only, as that possessed by deceased in the form of his stock in the Northwest Ice Machine Company at the time he married appellant in 1919, when that stock was his separate property.

While deceased, up until 1926, was the general manager and owned the larger part of the stock of the Northwest Ice Machine Company, its business was at all times carefully preserved as a separate, legal entity, apart from the personal affairs of the deceased. The business was at all times conducted in the name of the company. Neither his nor the community's credit was ever pledged to aid the business. Numerous bank loans were made to the company upon notes signed only by the company's name. He at all times received a salary for his services rendered to the company, and it is not claimed but that the amount of salary paid him from time to time was in amount fair in all respects for the services rendered by him to the company. Indeed, we see no room for the making of any such claim.

In August, 1926, shortly after the sale by deceased of his stock in the original Northwest Ice Machine Company to the Baker Ice Machine Company, he made his will, in due form, leaving substantially all of his property in the state of Washington to his son Leon, Jr., a considerable portion of which, however, was left to Leon, Jr., to hold in trust by him and pay the income therefrom to appellant during her lifetime, and upon her death or her remarriage to become his sole property.

On January 11, 1931, deceased died, still being a

resident of Seattle. Soon thereafter, his will was duly admitted to probate, Leon, Jr., being thereupon confirmed as executor, when he duly qualified and entered upon the administration of the estate. Thereafter, this controversy arose and proceeded to trial and judgment, as above noticed. It may be noted here that, according to the record before us, no one is interested in the estate other than Leon, Jr., and appellant, the widow of deceased.

As we understand the principal contention here made in behalf of appellant, it is that the much larger part of the value of the stock of the Northwest Ice Machine Company sold by the deceased to the Baker Ice Machine Company in 1926 accrued after his marriage to appellant in 1919, solely as the result of his personal efforts, and hence solely as the result of the personal efforts of the community; and that, thereafter, at least the larger part of the proceeds of that sale, consisting of the notes and the one hundred shares of stock here in question, is in any event community property.

Counsel for appellant invoke the general statutory rule that all property acquired by the husband or wife during marriage is community property, other than property so acquired by "gift, bequest, devise or descent, with the rents, issues and profits thereof." Rem. Comp. Stat., §§ 6890-6892. So our problem is as to whether any portion of the proceeds of the sale by deceased of his stock in the Northwest Ice Machine Company to the Baker Ice Machine Company in 1926 was at the time of his death the separate property of himself or the community property of himself and the appellant.

It is quite plain that, when deceased married appellant in 1919, the stock of the Northwest Ice Machine Company, then owned by him, was wholly his separate

property, whatever its increased value may have been up to that time. It is equally plain that, whatever its increased value may have been up to the time of its sale by him to the Baker Ice Machine Company, it remained wholly his separate property, unless we must hold that such increased value became community property as wholly the result of his personal efforts.

It may be conceded that there is a sense in which this increased value of the stock was the result of the personal efforts of deceased, but the same might be said of any stockholder in any corporation of which he happens to be manager or principal employe, receiving a salary from the corporation for his services. It seems to us, under the circumstances here appearing, that the salary paid by the corporation to deceased, the salary being apparently a fair compensation for his services, became the measure of the interest of the claim of the community against his personal earnings, and that the increased value of his stock, which was his separate property at the time of their marriage, became but the ''issues and profits'' of such separate property, and hence also became his separate property.

Referring to our own decisions, counsel for appellant seem to rely most strongly upon our decision in *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129. It seems to us that there were controlling elements there present which are not here present. There, the corporation was organized and the stock in question subscribed for by the husband and purchased by him with money furnished both by himself and his wife in contemplation of marriage but a few days before their marriage. The husband furnished four hundred dollars and the wife five hundred dollars to pay for the stock, which was subscribed for by the husband. The business was commenced and thereafter operated by

the husband as manager thereof. The business was financed to a large extent by loans secured by notes signed by the corporation, the husband and others interested in the corporation; thus in a large measure being financed by the community credit. The business prospered to the extent that the stock increased in value twentyfold. Dividends were paid from time to time upon the stock, and were commingled with community funds so that it was not possible to follow them. It is true that the husband was paid a salary for the management of the business, but that was regarded by us as not of substantial, controlling effect, in the light of the other circumstances.

Our later decisions in *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414, *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, *Rogers v. Joughin,* 152 Wash. 448, 277 Pac. 988, and *In re Gulstine's Estate,* 166 Wash. 325, 6 P. (2d) 628, lend support to our conclusion here reached, and, we think, demonstrate that the *Buchanan* case is not controlling in our present inquiry. Indeed, the question of what is and what is not community or separate property in cases of this nature, that is, in cases calling for an inquiry as to what is or what is not property acquired by the personal efforts of one of the spouses, when coming in close relationship with the question of what is or is not separate property resulting as issues and profits of separate property, necessarily depends upon the circumstances of each particular case. No decision has come to our notice which we regard as holding contrary to our present conclusion.

We note that the inventory embodies a listing of some other items of property of comparatively small appraised value. These seem to have been lost sight of in this controversy, though the question of their community or separate character seems to have been

drawn in question by the pleadings. The record, we think, is such as to call for the conclusion that their separate or community character has not been regarded by the parties as of any serious moment in this controversy.

One or two other errors are claimed and briefly presented to us. We deem it sufficient to say that we have carefully noticed them, and are of the opinion that they are wholly without merit.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, STEINERT, and HERMAN, JJ., concur.