C. CLIFFORD MINNICK (SOMETIMES KNOWN AS CLIFFORD C. MINNICK), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17077. Promulgated January 11, 1950.

*Maurice R. McMicken, Esq.,* and *George W. Roberts, Esq.,* for the petitioner.

*Douglas L. Barnes, Esq.,* for the respondent.

OPINION.

LEMIRE, *Judge*: Petitioner contends that under Washington law all of the income for the taxable years from the 950-acre farm which he inherited from his brother and from the 90-acre tract which he and his wife purchased in 1941 was community income. Respondent concedes that the income from the 90-acre tract was community income, but contends that the 950-acre tract was the separate property of petitioner and that all of the income from it is taxable to the petitioner individually.

Petitioner concedes that the 950-acre tract which he inherited from his brother is his separate property, but argues that the income derived from it was earned by the personal labor of his wife and himself and by the use of community farm machinery and equipment and is therefore community income. He also argues that his wife's earnings from butter, eggs, and cream and their joint earnings from the 90-acre farm acquired by purchase were so commingled with the earnings from the 950-acre farm as to make segregation of separate and community income impossible.

Determination of the community or separate nature of the income from the 950-acre farm depends upon the laws of the State of Washington. *Poe* v. *Seaborn*, 282 U. S. 101. Section 6890 of Remington's Revised Statutes of Washington defines the separate property and income of the husband as the "Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof. The wife's separate property is similarly defined by § 6891. Section 6892 defines the community property as all property "not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both." Property or income acquired by the personal labors of either the husband or the wife after marriage is clearly within the statutory definition of community property.

The general principles with respect to separate and community property under §§ 6890 and 6892, Remington's Revised Statutes of Washington, with citations to Washington decisions which established them, were assembled and restated in *In re Witte's Estate* (Sup. Ct. Wash., 1944), 21 Wash. (2d) 112; 150 Pac. (2d) 595. Those which are applicable to this proceeding are:

(2) The status of property, whether real or personal, is to be determined as of the date of its acquisition. * * * [Citations omitted.]

(3) The status of property, when once fixed, remains so in character until changed by deed, by agreement of the parties, by operation of law, or by the working of some form of estoppel. * * * [Citations omitted.]

(4) Separate property continues to be separate property through all of its changes and transitions so long as it can be clearly traced and identified, and its rents, issues, and profits likewise are and continue to be separate property. * * * [Citations omitted.]

* * * * * * *

(6) Where separate funds have been so commingled with community funds that it is no longer possible to distinguish or apportion them, all of the commingled fund, or the property acquired thereby, is community property. * * * [Citations omitted.]

(7) The rule last above stated is subject to the qualification that when the community property is inconsiderable in comparison with the separate property, the mass remains separate property. * * * [Citation omitted.]

In the *Witte* case the husband owned a 480-acre farm at the time of his marriage. He and his wife lived upon and farmed that tract as their home place for 7 years. During that period he purchased 476 additional acres with moneys derived from farming the home place. The husband ceased to farm his land himself after 7 years and thereafter operated his farms through renters. During the succeeding 11 years he purchased more land with the proceeds from the farm rentals. He also inherited additional lands during that period, which he rented but disposed of prior to his death. During their entire married life up to a short time before his death Witte and his wife lived on the home place. During the period that Witte farmed the home place the income from it was never apportioned between the rental value of the farm and the earnings derived from personal efforts. After he acquired other farms and operated them on a rental basis, he never segregated the rental income from them from other income.

The Supreme Court of Washington, applying the rules set out above, held that:

Unquestionably, the four hundred eighty acres originally owned by Mr. Witte and the one hundred fifty acres subsequently inherited by him from his mother remained his separate property throughout the years that he retained them. * * * Unquestionably also, Mr. Witte would have been entitled to retain as his own the "rents, issues, and profits" of his separate property, had he kept them separate, *that is to say, after 1905, when he rented his separate property, the rents were likewise his separate property, and he could have retained them as such had he kept them separate.*

*He was not, however, entitled to retain, as his separate property, all of the earnings from those properties during the period when he, with his wife, was actually farming them. Such earnings, though the result of his personal labors, were community property.*

* * * whether or not she [the wife] rendered the manual assistance referred to above is immaterial, for even if she did not, the personal earnings of the husband nevertheless belonged to the community. Nor can those personal earnings be held to be inconsequential * * *.

* * * the income from the home place during that period represented both the earnings by personal effort and the rental value of the property * * *. [Emphasis supplied.]

Respondent argues that in the *Witte* case the court was concerned only with a question of tracing community and separate income in a commingled fund in order to establish the nature of assets acquired from that fund, and that we should distinguish the nature of income when earned and the nature of a fund of mixed separate and community income. He argues that the nature of the income is established when it is earned and that the earnings here involved were all earnings and profits of petitioner's separately owned land and must be treated as petitioner's separate income.

Respondent has long maintained this position with respect to the nature of income derived from separately owned farm lands. See I. T. 1235, I–1 C. B. 232. That ruling was predicated upon several California cases cited therein, particularly *In re Pepper's Estate* (Calif., 1910), 112 Pac. 62. In that case the Supreme Court of California held that the products of land separately owned by either spouse became the separate profits of the one owning the land. The court reasoned that products of land separately owned by a spouse constitute separate property of such spouse and must be treated as a whole and are not allocable between the processes of nature upon the soil and the exertions of man in cultivating the crops. Respondent concluded in I. T. 1235, *supra*, that in the cases of *Hester* v. *Stine*, 46 Wash. 469; 90 Pac. 594, and *Seeber* v. *Randall*, 102 Fed. 215, similar results were reached as to property in the State of Washington.

In *Hester* v. *Stine, supra*, it was held that a crop of barley raised on land separately owned by a wife without any assistance from her husband was her separate property and could not be taken to satisfy a judgment on a debt contracted by the husband before the marriage. The trial court there found that "the said barley was raised on said real estate, and was the rents, issues, and profits thereof during the year 1903." The court did not find that the produce of the wife's land was in any part due to the personal labors of either the husband or the wife. In the instant case the personal efforts of both the husband and wife, as well as the use of their community owned machinery and equipment, went into the production of the income.

In *Seeber* v. *Randall, supra*, the Circuit Court of Appeals for the Ninth Circuit held that the separately owned land of a husband remained his separate property, without any community interest being vested in the wife because of the land's subsequent increase in value or because of improvements made thereon with the proceeds of crops raised thereon, though produced by the joint labors of the husband and wife. The court said further that:

* * * there is nothing in the present bill to take the case out of the general rule that the skill or labor of either spouse in carrying on farming or other like operations has nothing to do with the question of the ownership of the

crops or other proceeds thereof. In such cases the title to the products grows out of the title to the land itself, and belongs to its owner. * * *

We note, however, that no Washington cases were cited in support of the quoted statements and that those statements were by way of dicta, the holding of the case having to do only with the increase in value of the land and improvements on it.

We conclude that the cases cited by respondent in I. T. 1235, *supra*, are distinguishable from this case and that that ruling, predicated upon them, is not applicable here, since it is based upon no decisions of Washington courts in similar fact situations. The principle established by the Supreme Court of Washington in the *Witte* case, from which we quote, is clearly applicable here. The income from petitioner's 950-acre farm after 1941 represented both the separate earnings and profits of the land and the community earnings of the petitioner and his wife. What portion of the income was acquired by the personal efforts of the spouses and what portion is attributable to the land is a question of fact that must be determined on the evidence in this case. See *In re Hebert's Estate* (Sup. Ct. Wash., 1932), 169 Wash. 402; 14 Pac. (2d) 6. In *Julius Shafer*, 2 B. T. A. 640, we said that:

As we understand these decisions of the Supreme Court of Washington [*Jacobs v. Hoitt*, 119 Wash. 283; 205 Pac. 414; *In re Brown's Estate*, 124 Wash. 273, 214 Pac. 10], they lay down the rule that where business income was produced in part by the separate property and in part by the efforts of the community, and each of these two factors was substantial, the court will attempt to allocate such earnings; * * *

See also *Hugh B. Tinling*, 7 T. C. 1393.

In this case there is no doubt that the personal services of petitioner and his wife contributed substantially to the profits earned from the petitioner's separate farm, and we think that a satisfactory allocation between the return from the separate property and the return from community efforts can be made on the evidence of record. See *Jacobs v. Hoitt*, *supra;* *Salisbury* v. *Meeker*, 152 Wash. 146; 277 Pac. 376. In *Jacobs v. Hoitt*, *supra*, where the husband and wife were operating a bakery which was the separate property of the husband, the court said:

The rule is that the rents, issues, and profits of separate property are separate property. * * * The complication arises in this case from the fact that the separate property did not produce in and of itself all the profits which accrued to the business. These profits were increased by the labor and effort of the husband and wife, whose earnings after their marriage of course constituted community property. The difficulty here is to apportion those profits between the original separate property and the subsequent community earnings.

For a number of years the petitioner and his wife had been operating the farm on a community basis and had been paying one-third of

the crops grown thereon to the owner as rent. In the absence of any evidence to the contrary, we think that one-third of the crops grown during the taxable years here involved was the fair rental value of the land and the amount allocable to the land, as the separate income of the petitioner, while two-thirds of the crops produced were the result of the personal efforts of the petitioner and his wife and constituted community income.

Our findings of fact as to the value of the buildings and fences on the petitioner's farm as of August 1939 are dispositive of the depreciation issue raised in this case. It is only necessary to point out that the dwelling house and brick cellar, used for food storage, were for petitioner's personal use rather than for the production of income, and are not subject to depreciation for tax purposes.

Petitioner also claims depreciation deductions for the years here involved on certain other assets, including a spring box, cooler house, concrete water trough, concrete spring box in field, and a concrete water reservoir. However, petitioner did not raise any issue in the pleadings with respect to these assets, and any treatment of them here would be outside the scope of our jurisdiction in this proceeding. *Coosa Land Co.*, 29 B. T. A. 389; affd., 103 Fed. (2d) 555.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: We are confronted again by the anomalous position which the community property law has attained in the field of Federal taxation. See *William Kirkman Gray*, 5 T. C. 290; reversed (.C. C. A., 5th Cir.), 159 Fed. (2d) 834; *George K. Brennen*, 4 T. C. 1260; *Stella Wheeler Bishop*, 4 T. C. 588; reversed (C. C. A., 9th Cir.), 152 Fed. (2d) 389; *Estate of James F. Waters*, 3 T. C. 407. Long before *Poe* v. *Seaborn*, 282 U. S. 101, and in fact before *Lucas* v. *Earl*, 281 U. S. 111, Mr. Justice Holmes, in an opinion from which there was only one dissent, pointed out:

> But the question before us is with regard to the power and intent of the Revenue Act * * *. Even if we * * * assume that the wife had an interest in the community income that Congress could tax if so minded, *it does not follow that Congress could not tax the husband for the whole.* * * * *he alone has the disposition of the fund.* * * * *That he may be taxed for such a fund seems to us to need no argument. The same and further considerations lead to the conclusion that it was intended to tax him for the whole.* For not only should he who has all the power bear the burden, and not only is the husband the most obvious target for the shaft, but the fund taxed, while liable to be taken for his debts, is not liable to be taken for the wife's * * *. [*United States* v. *Robbins*, 269 U. S. 315, 327–8; emphasis added.]

Although the Supreme Court was there discussing the law of California, the same power exists in the husband in the State of Washington. *Warburton* v. *White*, 176 U. S. 484, 494. And the tax-imposing

sections were twice reenacted,[1] in 1926 and 1928 with this authoritative pronouncement, and no other, in effect.

The further inconsistency arises that although in *Poe* v. *Seaborn*, *supra*, the Supreme Court subsequently relieved the husband of taxation on the wife's theoretical share of Washington community income, it did so in large measure in reliance upon a settled course of administrative construction. We, on the contrary, are here lifting from the husband the tax burden upon income which has uniformly been taxed to him under a consistent and long standing administrative practice. I. T. 1235, I–1 C. B. 232, which in turn was soundly grounded in the case law of the State of Washington.[2] But in the face of that established construction of the Federal tax law and in reliance upon the supposed authority of a local decision, *In re Witte's Estate*, 21 Wash. (2d) 112; 150 Pac. (2d) 595, the operation of our uniform system of Federal taxation is now required to undergo a change.

The *Witte* case in the first place dealt with the devolution of property upon the husband's death, a situation as different from this one as was *Seeber* v. *Randall* (C. C. A., 9th Cir.), 102 Fed. 215, which we now dismiss as "dicta" on the present issue.[3] And, since the largest deficiency is for the year 1943, and the *Witte* case was not decided until 1944, one can not but wonder what was the Federal law when *Hester* v. *Stein* and not *Witte Estate* represented the controlling authority in the State of Washington.

*Poe* v. *Seaborn*, *supra*, represents the Federal law on the subject of community income in the State of Washington. But it does not reach this case, and I see no warrant for extending its scope to include income which was earned by the separate real property of the husband and his personal services, which he had the right to use, over which he had complete control, and which for thirty years the Federal law and uniform administrative practice has dealt with as his taxable income. It may be that recent amendments limit the future incidence of this type of controversy. But for that very reason, and for the sake of the uniformity and integrity of our legal system, this seems to me an appropriate time to reexamine our premises, so as not to deserve repetition of the stricture that the "tax strikes at the jugular without mercy where the common law is concerned, but displays a tender respect for technical formalities where community property is in question." 1 Paul, Federal Estate and Gift Taxation, p. 61.

---

[1] Of special interest is Revenue Act of 1926, sec. 1212.

[2] *Hester* v. *Stein*, 46 Wash. 469, 90 Pac. 594, which held comparably to Mr. Justice Holmes' comment in the *Robbins* case that crops raised by the wife on land separately owned by her could not be taken to satisfy a debt of the husband. It did not appear to be any concern of the Washington court in that case whether or not the personal services of the wife had contributed to the creation of the crop. See also *Seeber* v. *Randall* (C. C. A., 9th Cir.), 102 Fed. 215.

[3] In that case it was held according to the headnote that, under the law of Washington, land which was the separate property of the husband remained so at his death and did not become to any extent community property "because of improvements made with the proceeds of crops raised thereon though produced by the joint labor of both husband and wife."