[No. 34848.   Department Two.   September 10, 1959.]

*In the Matter of the Estate of* BERTHA Q. ALLEN, *Deceased.*[1]

---

[1]Reported in 343 P. (2d) 867.

*Frank J. Blade,* for appellant.

*Richard W. Axtell* and *Michael J. O'Brien,* for respondent.

FOSTER, J.—Appellant, administrator of the estate of his deceased wife, appeals from an order disapproving his final account and petition for distribution. The order directed that certain property, which was found to belong to the community, be inventoried.

Both parties had been previously married. By a prior marriage, Bertha Q. Allen had a son who filed objections to the final account. The objections raised issues as to whether various items of personal property, presently noticed, were the separate property of the husband or were of the marital community. The court found that all of the property belonged to the community.

The first question to be decided is whether series E United States savings bonds, of the approximate value of $2,500, are the separate property of the appellant or the community property of the appellant and his deceased wife. The bonds

were purchased after marriage and paid for by deduction from the appellant's wages.

The treasury regulations provide that the registration of the bonds shall be conclusive evidence of ownership,[2] and that they are not transferable.[3] Appellant's argument is that these regulations were inherent provisions of the bonds and, therefore, such were his separate property.

*Decker v. Fowler,* 199 Wash. 549, 92 P. (2d) 254, 131 A. L. R. 961, held that the regulations of the treasury department were for the government's convenience and to avoid numerous transfers, but that the United States had no concern to whom the money belonged after the bonds were paid. A subsequent statute, RCW 11.04.230,[4] deals with the effect of the death of a co-owner, and RCW 11.04-.240[5] deals with the beneficiary survivor of a registered owner. In this instance, the deceased wife, Bertha Allen, was a beneficiary, but there is no statutory provision governing that contingency. Therefore, the matter is governed by the community property law of the state.

RCW 26.16.010 provides that property owned by the husband before marriage and that acquired after marriage by

---

[2]"United States Savings Bonds are issued only in registered form. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in Subpart E and § 315.48 of Subpart I of this part, will be considered as conclusive of such ownership and interest. . . ." 31 Code of Federal Regulations, Money & Finance: Treasury, chapter 2, § 315.5, p. 472.

[3]"Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in the regulations in this part and then only in the manner and to the extent so provided. . . ." 31 Code of Federal Regulations, Money & Finance: Treasury, chapter 2, § 315.15, p. 477.

[4]"If either co-owner of United States savings bonds registered in two names as co-owners (in the alternative) dies without having presented and surrendered the bond for payment to a federal reserve bank or the treasury department, the surviving co-owner will be the sole and absolute owner of the bond." RCW 11.04.230.

[5]"If the registered owner of United States savings bonds registered in the name of one person payable on death to another dies without having presented and surrendered the bond for payment or authorized reissue to a federal reserve bank or the treasury department, and is survived by the beneficiary, the beneficiary will be the sole and absolute owner of the bond." RCW 11.04.240.

gift, devise or descent, and the rents, issues and profits thereof, shall be the husband's separate property.

RCW 26.16.020 similarly provides for the wife's separate property.

RCW 26.16.030 is as follows:

"Property not acquired or owned [,] as prescribed in RCW 26.16.010 and 26.16.020 [,] acquired after marriage by either husband or wife or both, is community property. . . ."

██ All property acquired after marriage except by gift, devise or descent is community property. *California-Western States Life Ins. Co. v. Jarman,* 29 Wn. (2d) 98, 185 P. (2d) 494; *Small v. Bartyzel,* 27 Wn. (2d) 176, 177 P. (2d) 391; *In re Towey's Estate,* 22 Wn. (2d) 212, 155 P. (2d) 273; *In re Hebert's Estate,* 169 Wash. 402, 14 P. (2d) 6; and *Sadler v. Niesz,* 5 Wash. 182, 31 Pac. 630.

It is undisputed that the series E bonds were purchased with community funds. The bonds so purchased, therefore, were community property. If this were not so, a designing spouse could at once transform community property into separate property by the purchase of United States bonds.

We are not unmindful of the fact that the supreme court of Texas, although badly divided, reached the opposite conclusion in *Ricks v. Smith* (Tex.) 318 S. W. (2d) 439. However, we prefer and adopt the view of the supreme court of Louisiana in *Slater v. Culpepper,* 222 La. 962, 64 So. (2d) 234, 37 A. L. R. (2d) 1216. In the course of its opinion holding that the character of the property was not transformed by the purchase of government bonds, that court said:

"Any other conclusion, obviously, would greatly endanger the recognized right of the wife to make a disposition by testament of her vested one-half interest in the community property. Thus, a husband could invest the community funds or property in United States savings bonds of the co-ownership type and, on outliving his wife, would become the sole owner of her interest, subject only to the legal rights of forced heirs if there be any."

Independent of the community property problem, the United States district court for the district of Nebraska

held in *Anderson v. Benson*, 117 F. Supp. 765, that the owner of property could not be deprived of it by the wrongful purchase of government bonds and gave the same reason. Chief Judge Donohoe for that court said:

"Counsel for the defendants contend under the Treasury Regulations the form of registration of these bonds is conclusive of ownership, 31 C. F. R. (1949 Ed.) 315.2 et seq., and that this court cannot enter an order affecting either the ownership of the bonds or the proceeds received therefrom. If counsel's construction of the regulations were accepted without qualification United States Savings Bonds would become the impenetrable sanctuary of ill-gotten gains and an excellent instrumentality for the perpetration of deliberate fraud. That Congress did not intend, in exercising its constitutional power to borrow money, to effect such a result is too clear to require discussion. See Ibey v. Ibey, 1945, 93 N. H. 434, 43 A. 2d 157."

We therefore hold that, irrespective of the treasury regulations, a member of the community cannot be deprived of community funds by the purchase of government bonds. The decision of the trial court on this aspect of the case was correct.

At the time of the marriage, appellant owned some stock which he carried in a trading account with a brokerage house. Moreover, he had real property from which he collected rents. Subsequently, the properties were sold.[6] At the time of Mrs. Allen's death in 1954, the stocks in the trading account had an approximate value of $38,000.

Appellant, during the entire marriage, was employed at wages varying from two to four hundred dollars monthly. He deposited some of his pay in a joint bank account monthly, and pocketed the remainder. However, no account was ever kept of his earnings subsequent to marriage, or of his separate property prior to marriage, or of the income from it. There is no record at all. However, the court did find that his total earnings during the marriage were $56,000. There is no way of identifying any portion of the property.

---

[6] As to one item, a vacant lot sold in 1954, the sum of $400 is not in dispute.

Mrs. Allen had some separate property, and, during the earlier years of the marriage, was gainfully employed.

Appellant's argument comes to this: That, although no record was kept of the separate or community property, he is entitled to have deducted from the whole the amount which the evidence shows was separate at the time of his marriage. This we cannot accept.

We think Judge Wicks adequately dealt with this issue. His language is:

"Now as to the stock account and the securities therein listed. The evidence is clear that these securities were purchased during the period of coverture of Mr. and Mrs. Allen. The presumption therefore is that they were community property. This, however, is a rebuttable presumption. The burden is upon Mr. Allen, who claims them to be his separate property, to furnish the evidence sufficient to rebut this presumption. His proof must be more than his mere declaration that they were purchased with his separate funds; or that he had separate funds available with which to purchase them. There should be evidence whereby the separate funds were used for this specific purpose. Except for Mr. Allen's own testimony, there is no evidence in this case to support his contentions. Mr. Allen is an astute businessman. And Mrs. Allen was an astute businesswoman. . . . If it had been Mr. Allen's intention that the income from the rental and sales of these tracts of real estate were to be kept separate and distinct from his earnings, the earnings of Mrs. Allen, and the property owned by Mrs. Allen at the time of their marriage and that afterwards inherited by her, he would have kept a careful record of these monies rather than carrying large sums of cash from rent and wages around in his pocket and keeping such sums hid away in several places in his home. It seems incredible to the court that a man with his business acumen would handle such vast sums of money over such a long period of time in such a careless and unbusinesslike manner. It is the opinion of the court, from all of the evidence presented and the lack of evidence to the contrary, that when these parties were married they had utter confidence in each other, that each knew the property of the other, that they knew each other's earnings; that they intended to and did help each other. That they had little or no thought of what one or the other had; that they each intended to and did live frugally; that all their funds and properties owned at the

time of marriage and that subsequently acquired by their efforts, their talents and toil, was placed in a common fund for the use and benefit of each other."

■ While it is true that separate property remains separate property and that the income from separate property is, likewise, separate property, it is true, nevertheless, that when separate funds are commingled with community funds so that it is impossible to distinguish between the two, the result must be that all such funds become community property by the process of commingling. The appellant's proof is nothing more than his own unsupported statement that the stocks were his separate property. This is not sufficient to rebut the presumption that such were community property. The applicable rule of law was stated in *Berol v. Berol*, 37 Wn. (2d) 380, 223 P. (2d) 1055. We there said:

"The burden rests upon the spouse asserting the separate character of the property acquired by purchase during the marriage status to establish his or her claim by clear and satisfactory evidence. *E. I. DuPont de Nemours & Co. v. Garrison*, 13 Wn. (2d) 170, 174, 124 P. (2d) 939, and cases cited therein. The requirement of clear and satisfactory evidence is not met by the mere self-serving declaration of the spouse claiming the property in question that he acquired it from separate funds and a showing that separate funds were available for that purpose. Separate funds used for such a purpose should be traced with some degree of particularity."

The court correctly concluded that the stocks were community property.

■ Appellant assigns error to the rejection of his offers of proof that, at periods nine and four years prior to her death, the decedent had said that she knew her husband was playing the stock market but that she did not object because he was using his own money. The sole ground of the offer was that the evidence was admissible as a declaration against the interests of the decedent, Mrs. Allen. Such, likewise, is the sole ground upon which the appellant assigns error, and is the basis of both his oral and written argument that the evidence was admissible. We do not, therefore, have to deal

with an offer of an admission of fact by a party's predecessor in interest. There is a vast distinction between the two.[7]

The offered testimony was not admissible as a declaration against interest for (1) it was not against the declarant's interest at the time it was made; and (2) the declarant had no consciousness that it would in the future be against her interest.

■ The requirements for admission of a declaration against interest are summarized in the concluding paragraph of 31 C.J.S. 958, § 217 (a), as follows:

" . . . (1) Declarant must be unavailable as a witness. (2) The declaration must have related a fact against the apparent pecuniary or proprietary interest of declarant when his statement was made. (3) The declaration must have concerned a fact personally cognizable by declarant. (4) The circumstances must render it improbable that a motive to falsify existed. . . ."

The late Judge Ralph O. Olson, for this court, in *National Bank of Commerce v. Lutheran Brotherhood*, 40 Wn. (2d) 790, 246 P. (2d) 843, said:

"Defendant argues that the offered evidence is admissible as an exception to the hearsay rule, as a declaration against the interest of the declarant. This exception is recognized and delineated in *Allen v. Dillard*, 15 Wn. (2d) 35, 54, 129 P. (2d) 813 (1942). See discussion of this case by Ed-

---

[7]"Judicial opinions and some texts fail to distinguish this exception [declaration against interest] from the one for parties' admissions. It is probably desirable to accept the traditional distinctions, adopted by Wigmore, and to draw the line clear between the two exceptions. Under this view, the admissions of a party-opponent come in without satisfying any of the requirements for declarations against interest. The admissions need not have been against interest when made, though it will usually happen that they were. The admitting party need not be, and seldom is, unavailable. Nor does the party need to have had personal knowledge of the fact admitted. Accordingly, when the admission of a party, or a party's predecessor in interest, is sought to be introduced, it should be offered as, and tested by the requirements for parties' admissions, not those for declarations against interest. . . ." McCormick on Evidence, chapter 28, § 253, p. 546.

See, also, Model Code of Evidence, chapter 6, Rule 506, p. 245 (*Cf.* Model Code of Evidence, chapter 6, Rule 509, p. 255); Uniform Rules of Evidence, chapter 8, Rule 63 (7), p. 201 (*Cf.* Uniform Rules of Evidence, chapter 8, Rule 63 (10), p. 202).

624

mund M. Morgan in 5 Vanderbilt Law Review 451, 472 (1952); see also Morgan, 12 Wash. L. Rev. 1, 18 (1937). If evidence is to be admitted under this exception, it is necessary to show, among other things, that the facts stated by the absent witness were against his proprietary or pecuniary interest, and he must have believed them to be so when he made the declaration."

No controversy existed between Mr. and Mrs. Allen when the words were spoken four and nine years prior. Nor was there then any foreseeable dispute between them. It is thus apparent that the offer did not satisfy the exception to the hearsay rule of admissibility as a declaration against interest.

Appellant assigns error upon the rejection of exhibits offered in evidence, but we find them without probative value.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

[1]Reported in 343 P. (2d) 877.