IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 87045-9-I |
| THOMAS ESPINOSA, | DIVISION ONE |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| KARI ESPINOSA, | |
| Appellant. | |

SMITH, J. — In 1991, Thomas and Kari Espinosa married. In March 2016, they separated, and Kari moved outside the marital home. Thomas filed for divorce in June 2016.

During their marriage, Thomas created Earthbound Corporation (EBC) in 2004, with Thomas and Kari owning 40 percent of the company. After the couple separated, Thomas took control of EBC. Kari was not involved with the business or business decisions.

At the conclusion of the dissolution proceedings, the court held that for purposes of distribution, the parties' property would be valued on March 29, 2016, the date of Thomas and Kari's separation. The court held that because EBC was formed during the marriage, it was a community asset in part, with the increased value and the additional shares acquired after the separation being Thomas's separate property. For Kari's share of the community interest in EBC,

the court granted her an equalizing payment totaling $1,600,000 with seven percent interest per annum. Kari appeals.

We find that some of the court's findings are in error and the court failed to make the necessary findings regarding some of the issues. We remand for the trial court to: (1) determine and issue findings regarding character and distribution of the additional shares of EBC purchased during the separation with a loan secured by community property, (2) make a determination regarding the property distribution based on this court's ruling and the parties' financial status at the time of dissolution in 2024, (3) reevaluate and issue findings regarding Kari's request for spousal support in light of any changes made to the property distribution, and (4) issue findings regarding the seven percent per annum interest rate on Kari's equalizing payment.

## FACTS

In 1991, Thomas and Kari Espinosa married.[1] In 2004, Thomas created Earthbound Corporation (EBC), with Thomas and Kari owning 40 percent of the company.[2] In March 2016, the couple separated, and Kari moved out of the marital home. Thomas filed for divorce in June 2016. The court ordered Thomas to pay Kari temporary spousal support in the amount of $3,000 a month. In addition, Thomas paid all of the mortgages, utilities, and health and vehicle

---

[1] We refer to the parties by their first names solely for the purpose of clarity and to avoid confusion.

[2] Thomas created other LLCs that held assets related to EBC including Tec Manufacturing, Intact, Diverse, and Earthbound Holdings LLC. These LLCs were included in the valuation of EBC.

insurance. Thomas also replaced Kari's car. The minor children resided with Thomas, and Kari did not pay child support. In September 2016, the court paused the divorce proceedings for a parental investigation and for a valuation of EBC. Litigation did not resume until July 2020.

While Thomas and Kari were married, Kari worked part-time as a travel agent and a retail salesperson.[3] Kari's travel business earned her less than $15,000 annually. In 2020, Kari inherited a business from her father, Bear Creek Tree Works, and her income rose significantly. In 2021 and 2022, Kari's income was over $150,000.

During their separation, Thomas took control of EBC. Kari was not involved with the business or business decisions after their separation. Thomas continued to work for EBC, made new investments, bought new equipment, and contributed new inventions. In December 2020, while the couple was still separated, Thomas purchased 6,000 additional shares of EBC through LavaGlo. LavaGlo was a corporation that Thomas formed after the separation. Thomas testified that he took a loan out from EBC to fund the purchase which he negotiated with the shareholders and included a repayment structure.

During trial, Arik Van Zandt, a jointly hired expert witness, testified about his valuation of EBC and discussed how he addressed the commercial property, Tye Street, owned by Tec Enterprises. Tec Enterprises was a separate entity

---

[3] Kari also worked on and off for her father in his insurance business and his tree business.

owned by Thomas. Van Zandt testified that the value of Tye Street's use was contained in the valuation of EBC.[4]

At the conclusion of the dissolution trial, the court held that for purposes of distribution, the parties' property, which included EBC, would be valued on March 29, 2016, the date of Thomas and Kari's separation. The profits and any additional shares obtained thereafter, would be Thomas's separate property.[5] Thomas was awarded all rights and title to EBC. Because EBC was formed during the marriage, the court considered it a community asset in part. EBC's valuation included the value of Tye Street. Kari received an equalizing payment totaling $1,600,000, with seven percent interest per annum. The court did not award Kari the spousal support she requested. Kari appeals.

ANALYSIS

Characterization of Property

First, Kari asserts that the court erred in characterizing the post-separation value of the parties' interest in Earthbound and the additional shares purchased by Thomas after the separation as Thomas's separate property. Thomas contends the court did not err because he purchased the additional shares with

---

[4] In EBC's valuation, Van Zandt also included Thomas's other LLCs that held assets for EBC.

[5] The court awarded all rights and interest in Bear Creek Tree Works to Kari. The court awarded Thomas three properties: two properties in Monroe, Washington and one in Snohomish, Washington. The court also awarded the following real properties to Thomas: a Larson boat, motorcycles, a horse trailer, a tractor, a Ford F-250, an Excursion, and a cargo hauler trailer. The court awarded Kari two properties—one in Snohomish, Washington and another in Leavenworth, Washington—as well as a motor sports vehicle and a Ford Excursion.

separate funds and his efforts are the reason for the increased value of EBC. While evidence supports the court's finding that Thomas was responsible for the increased value of EBC, the court erred in finding that the loan to purchase the additional shares was funded with Thomas's separate property. The court also erred in not including findings of fact regarding the repayment of the loan and its effect on the characterization of the property, if any.

In a marriage dissolution, all property, both community and separate, is before the court for distribution. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). The appellate court reviews de novo a trial court's characterizations of property as separate property or community property. *Zier*, 136 Wn. App. at 45. A court's property division will not be reversed if it can be sustained on any theory supported by record and law. *Sprague v. Sumitomo Forestry Co., Ltd.*, 104 Wn.2d 751, 758, 709 P.2d 1200 (1985). "When spouses . . . are living separate and apart, their respective earnings and accumulations shall be the separate property of each. RCW 26.16.140. " '[M]ere physical separation of the parties does not establish that they are living separate and apart sufficiently to negate the existence of a community.' " *Nuss v. Nuss*, 65 Wn. App. 334, 344, 828 P.2d 627 (1992) (alteration in original) (quoting *Oil Heat Co. v. Sweeney*, 26 Wn. App. 351, 354, 613 P.2d 169 (1980)). " 'The test is whether the parties by their conduct have exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship.' " *Nuss*, 65 Wn. App. at 344 (quoting *Sweeney*, 26 Wn. App. at 354). The character of

5

real property is determined by character of funds it is purchased with. *Rustad v. Rustad*, 61 Wn.2d 176, 178-79, 377 P.2d 414 (1963).

1.  EBC as Separate Property in Part

Kari claims that the equalizing payment should have been based on EBC's 2024 valuation, instead of its 2016 valuation. Specifically, Kari asserts that the couple's separation had no impact on EBC's property characterization, and Thomas's management of the business was still for the benefit of the community.

Kari moved out of the marital home in March 2016, and Thomas filed for divorce three months later. During the divorce proceedings, Kari and Thomas managed separate finances. After the separation, Thomas made EBC his own business. Thomas made new investments, bought new machinery and equipment, and had new ideas and inventions. Van Zandt also testified that EBC's increased business activity from 2016 to 2023 increased the value of EBC. Because it is evident that the parties renounced the community and lived separately for eight years while Thomas continued to run the business, it was not error for the court to find that EBC's increased value after the separation is Thomas's separate property. Substantial evidence supports the court's findings.

We find that the court's determination that the date of the valuation of EBC shares purchased prior to separation should be the date of separation was not error.

2. Thomas's Compensation

Even if the increased value is found separate property, Kari asserts that Thomas was compensated for those efforts. Kari contends that in a business, if the laboring spouse is compensated with a salary, the increased value of the business retains the original character of the business itself. However, Kari relies on law not applicable to this case.

Kari relies on *Hamlin v. Merlino*, 44 Wn.2d 851, 858-59, 272 P.2d 125 (1954), and *In re Hebert's Est.*, 169 Wash. 402, 407,14 P.2d 6 (1932). In both cases, the husbands owned all or substantially all of the stock of a corporation at the time of marriage and their salaries were based on fair market compensation; therefore, the courts held that the salaries had a community property interest. *Hamlin,* 44 Wn.2d at 858-59; *Hebert*, 169 Wash. at 407. Here, when the couple was married, they owned 40 percent of the corporation. Thomas was not a majority owner until after the separation when his income was no longer a community asset, just as Kari's salary was not. Accordingly, *Hamlin* and *Herbert* are not applicable in this case, and Kari is not entitled to Thomas' salary. Therefore, the trial court did not err.

3. 2020 Acquired Shares

Lastly, Kari claims that the court erred in characterizing the additional 6,000 EBC shares as separate property. Kari asserts that without clear and convincing evidence that the shares were acquired with separate earnings, they must be characterized as community property. Additionally, Kari notes that the purchase was funded through a loan from EBC, a community property business.

Thomas would not have been able to fund the loan without the community interest in EBC.

Kari misstates the burden of proof for property acquired while separated. Because the couple was separated when Thomas bought the additional shares, the shares are presumed separate property. A spouse seeking a community interest in separate property must overcome the presumption that separate property maintains its separate character, without evidence to the contrary. *Hamlin*, 44 Wn.2d at 857–58.

The character of an asset is determined by the character of the cash. *In re Marriage of Chumbley,* 150 Wn.2d 1, 8, 74 P.3d 129 (2003). Although few cases address the characterization of stocks, courts have used real property rules analogously. *Chumbley,* 150 Wn.2d at 7. Under the mortgage rule, used to determine the character of real property, the character of the ownership of the debt balance is determined by the character of the credit pledged to secure the funds. *Chumbley,* 150 Wn.2d at 7. The character of the property does not change if the debt is paid off by funds of a different character. *Chumbley,* 150 Wn.2d at 8.

Here, Kari asserts that Thomas would not have the ability to acquire the loans for the additional shares but for the parties' community interest in EBC. Thomas did not provide evidence to support that the couple's community property or interest in EBC was not used to purchase the additional funds.[6]

---

[6] At oral argument, Thomas asserts that the virtue of his relationship between LavaGlo, his separate entity, and EBC secured the loan for the additional shares. Thomas claims the debt obligation was incurred by Thomas,

Thomas testified that LavaGlo, his separate company, obtained the funds for the loan to pay for the down payment for the additional EBC shares. Thomas also testified that he repaid the loan with his separate property. However, the court did not appear to consider the evidence supporting that the loan for the additional shares was secured through the community's shares in EBC. While it was not error for the court to consider Thomas's sole contribution to the repayment of the loan when making its determination regarding distribution of the value of the additional shares, the evidence does not support the trial court's characterization of the loan itself. We remand to the trial court to make the proper characterization of the property and to consider that when making its final distribution.

<u>Tye Street Building</u>

Next, Kari asserts that the court erred in not crediting her for her interest in the Tye Street building because the property is owned by a separate business. Kari claims that because Tec Enterprises is separate entity that was created during the marriage, she should have been awarded half the value for her interest in Tye Street. Because Van Zandt testified that he factored in the value of the property and the value of the use of Tye Street in his valuation of EBC, there was no error.

The party claiming error regarding the court's finding of fact has the burden of showing that a finding of fact is not supported by substantial

not by the community. Lastly, Thomas conceded that the cash used for the loan came from EBC, but it was not community property. Thomas stated that any money that he received from EBC after the separation was his separate property.

evidence. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). The presumption is in favor of the trial court's findings. *Fisher Props.*, 115 Wn.2d at 369. " 'Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true,' " or, in short, by a preponderance of the evidence. *In re Dependency of A.C.*, 1 Wn.3d 186, 193, 525 P.3d 177 (2023) (quoting *In re Parental Rights to X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013)). When expert testimony is given, the factfinder has wide latitude in the weight to give the expert's opinion. *In re Marriage of Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993).

Though Kari now contests the court's ruling regarding Tye Street, she did not present evidence that differed from Van Zandt's testimony, nor did she offer a valuation of EBC without the value of Tye Street. Ultimately, Kari conceded that Tye Street is tied up in the valuation of EBC, should stay with EBC, and no liquidation should occur because the value of the building is encapsulated within the testimony and report of the expert.[7] Substantial evidence supports the court's determination regarding Tye Street.

## Property Division

Kari contends that the court erred when it held that the appropriate time of valuation of the property was in 2016 when the couple separated, instead of 2024 when divorce proceedings began. Kari claims this error resulted in a

---

[7] When delivering its findings, the court asked the parties to confirm that Tye Street was owned by EBC. Thomas confirmed and asserted that Tye Street was in the evaluation of EBC. Kari concurred.

grossly disproportionate property division. While the court has discretion to determine whether to value the property at the date of separation, the court must, when making the distribution of the property, characterize it properly, consider any appreciation or depreciation in value, and consider the circumstances of the parties to make a just and equitable distribution. Because we are remanding to the trial court based on lack of findings and other errors, we will not reach this issue as the court may change the distribution of the property on remand after the proper characterization and additional findings of fact.

We review property division under an abuse of discretion standard. *In re Marriage of Doneen*, 197 Wn. App. 941, 949, 391 P.3d 594 (2017). Because a trial court is in the best position to determine what is a fair distribution of the property in a marriage dissolution proceeding, an appellate court will reverse a trial court's decision only if a manifest abuse of discretion occurred. *Doneen*, 197 Wn. App. at 949. A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013). RCW 26.09.080 states that the

> court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
>> (1) The nature and extent of the community property;
>> (2) The nature and extent of the separate property; [and]
>> (3) The duration of the marriage.

Under RCW 26.09.080, when making a disposition of property, the court shall consider the economic circumstances of each spouse at the time the division of property is to become effective. In issues of property division, the paramount concern is the economic condition that a dissolution decree leaves the parties. *In re Marriage of Stenshoel*, 72 Wn. App. 800, 812-13, 866 P.2d 635 (1993). Moreover, if the property is valued at the trial date, instead of the separation date, appreciation and depreciation in value should be considered in making an equitable division. *Lucker v. Lucker*, 71 Wn.2d 165, 168, 426 P.2d 981 (1967). The court shall then make a disposition of the property. RCW 26.09.080. The character of the property is not controlling, rather, the court must ensure the division of property is just and equitable. *In re Marriage of Irwin*, 64 Wn. App. 38, 48, 822 P.2d 797 (1992). Just and equitable distribution does not mean that the court must make an equal distribution. *Larson*, 178 Wn. App. at 138. The ultimate question is whether disposition is fair and equitable under all the circumstances. *In re Marriage of Janovich*, 30 Wn. App. 169, 171, 632 P.2d 889 (1981).

As stated *supra*, the court did not err in finding the time of valuation was 2016 when the couple separated. Next, we must determine whether Kari received an equitable distribution. Although the court found that the date of valuation was 2016, RCW 26.09.080 is clear that the court shall consider economic circumstances of the parties at the time of the division of property, not at the time of the property valuation. Thus, the court's failure to consider the parties circumstances at the time of trial, as well as any appreciation or

depreciation in the value of the property when making the distribution of the property, was error. We remand for the court to distribute the parties' properly after considering their circumstances at the time of the dissolution trial.

Spousal Maintenance

Kari also asserts that the trial court erred in its denial of spousal maintenance because Kari was left in disparate economic circumstances compared to Thomas. Because the trial court did not issue findings, we remand for the trial court to determine whether spousal maintenance is appropriate after considering the relevant factors and its final property distribution.

The award of spousal maintenance is reviewed for abuse of discretion. *In re Marriage of Wilcox*, 3 Wn.3d 507, 517, 553 P.3d 614 (2024). Under RCW 26.09.090, "the maintenance order shall be in such amounts and for such periods of time as the court deems just." The court shall consider all relevant factors, including but not limited to: financial resources of the party seeking maintenance, standard of living during the marriage, duration of the marriage, age, physical and emotional condition of the spouse seeking support, and ability of the spouse to pay maintenance. RCW 26.09.090.

In the trial court's ruling, the judge noted that Thomas paid 90 months of spousal maintenance at $3,000 a month. Although the court considered those payments reasonable for a pending divorce, the court did not address the parties' current circumstances. The court failed to mention the statutory factors or enter findings regarding its denial of Kari's request for maintenance. We remand for

the court to consider the maintenance request together with any changes it may make regarding the property distribution.

Equalizing Payment's Interest Rate

Kari contends that the court erred in awarding less than the statutory interest on her equalizing payment. Thomas claims that the court did not err awarding Kari less than the statutory rate because it considered testimony about EBC business risks. Because the trial court did not provide findings for awarding a lower interest rate, we remand for the court to issue findings.

Awarded interest rates are reviewed for abuse of discretion. *Stenshoel*, 72 Wn. App. at 812. A trial court abuses its discretion if it provides for an interest rate below the statutory rate without setting forth adequate reasons for doing so. *Stenshoe*l, 72 Wn. App. at 812. RCW 4.56.110 requires that interest on judgments shall accrue at the maximum rate permitted under RCW 19.52.020. The trial court must state reasons for awarding a party to a marital dissolution less than the statutory interest rate. *In re Marriage of Harrington*, 85 Wn. App. 613, 632, 935 P.2d 1357 (1997). If the record is silent on the reasons the court decided to set the interest rate below the statutory rate, the appellate court should not search the record for reasons to justify the exercise of discretion. *Harrington*, 85 Wn. App. at 632.

Here, the final divorce order states that the interest per annum is seven percent but did not provide reasons for the lower rate. Therefore, because the record is silent regarding why the court reduced the interest rate, we remand for

14

the court to make a finding regarding its decision to order less than the statutory interest rate.

## Attorney Fees

On appeal, Kari requests attorney fees.[8]  Under RAP 18.1, this court may award fees if authorized by law.  RCW 26.09.140 controls attorney fees on appeal.  To determine fees on appeal, the court "examine[s] the arguable merit of the issues on appeal and the financial resources of the respective parties." *Mansour v. Mansour*, 126 Wn. App. 1, 17, 106 P.3d 768 (2004).  Parties must file an affidavit of financial need at least 10 days before argument.  RAP 18.1(c).

Disregarding the evidence outside the record in Kari's affidavit, Kari's financial declaration demonstrates that her reasonable monthly expenses are greater than her monthly net income.  Thomas has not provided information that indicates that he does not have the ability to pay.  We grant Kari's request for attorney fees and remand to the trial court for the determination of a reasonable amount.

## Remand

The trial court erred in finding that the loan to purchase additional shares was funded with Thomas' separate property.  The court also erred in not including findings regarding the: (1) loan for additional shares, (2) property

_____

[8] Kari submitted a financial affidavit.  Thomas did not submit a financial affidavit.  Instead, Thomas replied to Kari's declaration with an objection and motion to strike.  The objection and motion also requested sanctions or the award of costs and attorney fees for Kari improperly filing her affidavit.  Because Kari properly filed a financial affidavit as required under RAP 18.1(c), Thomas's motion to strike and request for sanctions are denied.

15

division, (3) denial for spousal support, and (4) reduced interest on Kari's equalizing payment.

We remand for the trial court to: (1) issue findings and properly characterize the loan used to purchase the additional shares in 2020 as community property, and to determine how Thomas's repayment of the loan with his separate earnings should effect the property distribution, (2) make a determination regarding the property distribution based on this court's ruling and the parties' financial status at the time of dissolution in 2024, (3) reevaluate and enter findings regarding Kari's request for spousal support, (4) issue findings regarding setting the seven percent per annum interest rate on Kari's equalizing payment, and (5) determine the appropriate amount for Kari's attorney fees on appeal, and to amend the Final Divorce Order (Decree of Dissolution) as necessary.

_____

WE CONCUR:

_____     _____